UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LAYLA LINEGAR, | |
| Plaintiff, | CASE NO.:_____ |
| v. | JURY DEMANDED |
| MARK LOBANOFF, M.D., AND NORTH SUBURBAN EYE SPECIALISTS, LLP, | COMPLAINT |
| Defendants. | |

Plaintiff, LAYLA LINEGAR, by her attorneys, the LAW OFFICE OF TODD J. KROUNER and M.A. ZIMMER LAW, alleges for her complaint as follows:

## INTRODUCTION

1. This is a case of refractive eye surgery malpractice, brought against defendants MARK LOBANOFF, M.D., and NORTH SUBURBAN EYE SPECIALISTS, LLP ("NSES") (collectively, "DEFENDANTS"). According to DEFENDANTS' web site, DEFENDANTS claim that they are "the preferred LASIK provider of the Minnesota Vikings." That dubious claim is based on just one testimonial from Greg "Coffin Corner" Coleman, who indeed punted for the Vikings 25 years ago, before the invention of LASIK. Nevertheless, DEFENDANTS repeatedly fumbled plaintiff LAYLA LINEGAR's care. After three failed PRK eye surgery procedures in less than one year, DEFENDANTS left PLAINTIFF with an irreversibly scarred cornea in her left eye. This condition causes PLAINTIFF to be blind in that eye, and in need of a cornea transplant.

SCANNED
DEC 2 2 2010
U.S. DISTRICT COURT MPLS

## THE PARTIES AND JURISDICTION

2. LAYLA LINEGAR ("PLAINTIFF" or "MS. LINEGAR") is a resident of Florida. At the time of her treatment with DEFENDANTS, she resided at 19589 Tipton Street NW, Elk River, Minnesota 55330. MS. LINEGAR was born, educated and trained as an attorney in Ukraine.

3. DEFENDANT MARK LOBANOFF, M.D. ("DR. LOBANOFF") is a physician licensed to practice medicine in the State of Minnesota. Upon information and belief, he is board certified in Ophthalmology by the American Academy of Ophthalmology. At all times relevant to this dispute, DR. LOBANOFF treated MS. LINEGAR at NSES's office, which is located at 3790 Coon Rapids Boulevard, Coon Rapids, Minnesota 55433. DEFENDANTS also maintain a presence on the internet at www.nseyespecialists.com.

4. Upon information and belief, NSES is a limited liability partnership existing by and under the laws of the State of Minnesota. According to its web page, NSES is engaged in the business of offering medical services "in general ophthalmology, refractive surgery (LASIK, ICLs, phakic IOLs, clear lensectomy, etc.), cataract surgery and glaucoma surgery." Upon information and belief, at all times relevant to this dispute, DR. LOBANOFF was an owner of, partner in, shareholder in, employee of, and/or agent of NSES.

5. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship of the parties. PLAINTIFF is a citizen of a different state from DEFENDANTS. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

## FACTUAL BACKGROUND

6. In or about December 2008, PLAINTIFF presented at NSES, and consulted with DR. LOBANOFF about her suitability for LASIK surgery. Upon examination, DR. LOBANOFF confirmed that MS. LINEGAR was a suitable candidate for LASIK surgery. Consequently, MS.

LINEGAR was scheduled to have DR. LOBANOFF perform LASIK surgery on both of her eyes on January 7, 2009.

7. LASIK surgery is a form of refractive surgery by which a laser is used to permanently alter the shape of the patient's cornea, with the expectation that the patient would not require glasses. MS. LINEGAR understood that her surgical plan called for "monovision," whereby her right eye would be adjusted for distance vision, such as for driving, and her left eye would be adjusted for close vision, such as for reading.

8. According to DEFENDANTS' records, DR. LOBANOFF did not perform LASIK surgery on either of MS. LINEGAR'S eyes on January 7, 2009. Without telling her in advance, he had altered his surgical plan. Instead, he performed PRK.

9. According to DEFENDANTS' records, MS. LINEGAR was far sighted. Thus, she received hyperopic treatment in her left eye of 4 diopters ("D"). The PRK surgery was not successful. MS. LINEGAR complained of pain in her left eye, she could not read as had been expected, and on her post-operative visit on January 14, 2009, the visual acuity in her left eye was measured at 20/60.

10. A short time later, when MS. LINEGAR'S complaints did not improve, DR. LOBANOFF scheduled MS. LINEGAR for corrective surgery on April 15, 2009. Euphemistically, in the refractive surgery community, such corrective surgery is referred to as an "enhancement."

11. According to DEFENDANTS' records, on April 15, 2009, DR. LOBANOFF performed a second PRK surgery on MS. LINEGAR's left eye. Following the initial 4 D PRK treatment on January 7, 2009, DR. LOBANOFF sought to further "enhance" MS. LINEGAR's left eye with another 2.15 D PRK treatment on April 15, 2009. Indeed, on a preprinted form on NSES

letterhead, DEFENDANTS required PLAINTIFF to sign the following statement: "I Layla Linegar understand that the recommendation by Dr. Mark Lobanoff was to wait 6 months to have an enhancement to improve the tear film of the eye." That statement was dated November 20, 2009, prior to MS. LINEGAR's third surgery, discussed below. Inexplicably, and in seeming contradiction to DEFENDANTS' own written policy "to wait 6 months to have an enhancement," DEFENDANTS ignored this guideline, and failed to disclose DR. LOBANOFF's recommendation to wait 6 months, prior to the enhancement on April 15, 2009.

12. This second PRK treatment on April 15, 2009, was contraindicated and constituted a departure from the standard of care in the following four respects. First, the further treatment was premature. MS. LINEGAR'S left eye had not healed fully from the initial procedure, and she had not yet achieved refractive stability. Consequently, DR. LOBANOFF erred by further permanently altering MS. LINEGAR'S left cornea when in effect it was still "a moving target." Second, as with the first surgery, MS. LINEGAR was not offered contact lenses pre-operatively, to simulate the monovision that DR. LOBANOFF sought to create through his operative plan. Third, there is no evidence that cornea topographies were performed immediately prior to the April 15, 2009 surgery, which could warn of further changes in the shape or surface of the patient's cornea, or warn of the presence of other corneal disease, which may render further surgery inappropriate. Fourth, the cumulative total of 6 D of hyperopic treatment between the first two surgeries was excessive, increased the risk of corneal scarring, and increased the likelihood that the patient would not be satisfied with her resulting vision.

13. From April 2009 to November 2009, the condition of MS. LINEGAR'S left cornea did not improve. As a result of the first two PRK treatments on her left eye, MS. LINEGAR'S visual acuity was poor, she developed haze over her left cornea, and she developed a scar in her

left cornea, which left her functionally blind in her left eye. Moreover, because DEFENDANTS had treated her right eye for distance, MS. LINEGAR could not read. Finally, because in effect, all she had was monocular vision, or distance vision only in her right eye, her depth perception was also impaired, making it more difficult to drive an automobile.

14. According to DEFENDANTS' records, on November 20, 2009, DR. LOBANOFF then drew up a "Hail Mary" plan and performed his third PRK treatment on MS. LINEGAR'S left cornea according to DEFENDANTS' records. DR. LOBANOFF's plan called for an additional 2.3 D of treatment to MS. LINEGAR's left eye with this second enhancement surgery. Thus, the cumulative total of hyperopic treatment for MS. LINEGAR's left eye from the three surgeries which DR. LOBANOFF performed was an extraordinary 8.45 D. Again, instead of enhancing her vision, the surgery made it worse. The third surgery was again contraindicated, and constituted a departure from the standard of care. The repeated, unwarranted and excessive treatments made both the haze and scar worse. As a result, today, MS. LINEGAR has no effective treatment options remaining to restore the vision in her left eye. Consequently, she requires a cornea transplant, to replace her left cornea, which was destroyed by DEFENDANTS.

### FIRST CLAIM: MEDICAL MALPRACTICE

15. PLAINTIFF incorporates the allegations of Paragraphs 1-14, above.

### WRONGS COMPLAINED OF DEFENDANT DR. LOBANOFF

16. DR. LOBANOFF had a duty to care for plaintiff LAYLA LINEGAR using the standard of care normally exercised by physicians generally under like conditions and similar surroundings. DR. LOBANOFF was negligent by, among other things, failing to render appropriate medical care and treatment to plaintiff LAYLA LINEGAR.

17. DR. LOBANOFF was negligent in the services rendered for and on behalf of

PLAINTIFF in failing to use reasonable care; in failing to heed PLAINTIFF'S condition; in departing from accepted standards in the procedures and treatment performed; in failing to follow appropriate practice; in failing to properly examine PLAINTIFF; in failing to properly treat PLAINTIFF'S eyes; in failing to determine that PLAINTIFF was not a suitable candidate for further refractive eye surgery; in performing PRK eye surgery on PLAINTIFF when said procedure was contraindicated; and, was otherwise negligent in his treatment of PLAINTIFF.

18. As a direct and proximate result of the negligence of DR. LOBANOFF, plaintiff LAYLA LINEGAR suffered injuries and disabilities which were caused wholly and solely by reason of the carelessness, negligence and malpractice of DEFENDANTS, each of them, their agents, servants and/or employees as set forth above, with no fault or lack of care on the part of PLAINTIFF herein contributing thereto.

19. As a further direct and proximate result of the negligence of DR. LOBANOFF, plaintiff LAYLA LINEGAR experienced pain and suffering, suffered loss of vision, was otherwise injured and damaged because of the complications of PRK surgery.

20. As a result of defendant DR. LOBANOFF'S negligence, PLAINTIFF sustained damages.

## WRONGS COMPLAINED OF DEFENDANT NSES

21. PLAINTIFF incorporates the allegations of Paragraphs 1-20, above.

22. Defendant NSES is vicariously liable under the laws of agency and respondeat superior for the acts and omissions of its agents, partners, members and/or employees who negligently treated and/or negligently cared for plaintiff LAYLA LINEGAR while she was a patient of these defendants. Any negligence of these agents, partners, members, and/or employees is imputed, by law, to defendant NSES, under the principles of actual or apparent

agency and/or respondeat superior.

23. Defendant NSES was directly negligent in its failure to train, supervise, and manage DR. LOBANOFF.

24. As a result of defendant NSES's negligence, PLAINTIFF sustained damages.

## SECOND CLAIM:

## BREACH OF INFORMED CONSENT

25. PLAINTIFF incorporates the allegations of Paragraphs 1-24, above.

26. Each of DEFENDANTS, their agents, servants and/or employees failed to disclose all of the information that reasonably prudent medical practitioners, under similar circumstances, would explain or disclose to a patient including a failure to disclose the risks and benefits of the procedures performed, the alternatives thereto and the risks and benefits relating to the alternatives and they otherwise failed to properly, adequately, thoroughly and fully inform plaintiff herein.

27. DEFENDANTS failed to communicate orally the risks of the three surgeries to the patient adequately. DEFENDANTS' written forms of informed consent were chaotic and did not correspond to the respective surgical procedures. For the first PRK surgery, on January 7, 2009, DEFENDANTS used a LASIK surgery consent form. For the second PRK surgery, DEFENDANTS used a PRK consent form; however, they omitted to use their "wait 6 months" form, discussed above. For the third surgery, on November 29, 2009, DEFENDANTS used a LASIK/PRK enhancement form, but made the patient sign the "wait 6 months" form, even though more than 6 months had elapsed since the second surgery on April 15, 2009.

28. A reasonably prudent person in PLAINTIFF'S position would not have undergone the procedures performed if she had been fully informed, and that lack of informed consent is a

proximate cause of the injuries suffered herein for which recovery is sought.

29. The treatment rendered by DEFENDANTS herein was not emergent treatment, an emergency procedure or emergency surgery.

30. As a result of DEFENDANTS' breach of duty of informed consent, PLAINTIFF sustained damages.

## THIRD CLAIM:

## MINNESOTA CONSUMER FRAUD ACT

31. PLAINTIFF incorporates the allegations of Paragraphs 1-30, above.

32. At all times relevant to this lawsuit, DEFENDANTS claimed that they are "the preferred LASIK provider of the Minnesota Vikings," and encourage their patients, and prospective patients to "trust the pro the pros trust."

33. DEFENDANTS' claim that they are "the preferred LASIK provider of the Minnesota Vikings" (the "Statement") is false, and constitutes a fraud, false pretense, false promise, misrepresentation, misleading statement and/or deceptive practice, within the meaning of the Minnesota Consumer Fraud Act (the "CFA").

34. The Statement was made by DEFENDANTS with the intent that others, including MS. LINEGAR, rely thereon in connection with the sale of their services.

35. MS. LINEGAR did rely on DEFENDANTS' statement, in trusting DEFENDANTS to care for her eyes, and permitting DR. LOBANOFF to operate on her three times in 2009.

36. As a result of DEFENDANTS' violation of the CFA, MS. LINEGAR sustained damages.

37. As a result of DEFENDANTS' violation of the CFA, they should be enjoined from making the Statement, and other similar such statements.

DAMAGES

38. As a direct and proximate result of the negligent acts and negligent omissions of defendants, plaintiff LAYLA LINEGAR, suffers severe, unnecessary pain and associated damages, for which PLAINTIFF is entitled to recover by law.

39. As a direct and proximate result of the negligence of DEFENDANTS, PLAINTIFF has suffered substantial damages including medical expenses, loss of earnings and/or impairment of earning capacity, loss of enjoyment of life, mental anguish, pain and suffering and other damages.

40. As a direct and proximate result of DEFENDANTS' violation of the CFA, PLAINTIFF has suffered substantial damages including medical expenses, loss of earnings and/or impairment of earning capacity, loss of enjoyment of life, mental anguish, pain and suffering and other damages, and such statutory damages as are provided under the CFA, including without limitation reasonable attorney's fees and cost.

**PRAYER FOR RELIEF**

41. WHEREFORE, PLAINTIFF demands of DEFENDANTS a reasonable sum of money as compensatory damages on the first and second claims.

42. WHEREFORE, PLAINTIFF demands of DEFENDANTS a reasonable sum of money as compensatory damages on the third claim, together with statutory damages under the CFA, and a permanent in junction barring DEFENDANTS from asserting that they are "the preferred LASIK provider of the Minnesota Vikings," absent a true and non-misleading basis for so claiming.

43. WHEREFORE, PLAINTIFF respectfully demands a jury and reserves the right to amend the Complaint, should the Court permit same, to conform to the evidence as it develops.

Dated: Minneapolis, MN
December 22, 2010

Respectfully submitted,

LAW OFFICE OF TODD J. KROUNER

*Todd J. Krouner*
Todd J. Krouner, Pro Hac Vice (#1980325)
Scott J. Koplik, Pro Hac Vice (#4634994)
93 North Greeley Avenue
Chappaqua, New York 10514
(914) 238-5800

M.A. ZIMMER LAW

*MAZ*
Michael A. Zimmer
88 South 10th Street, Suite 300
Minneapolis, MN 55403
(612) 746-5546

ATTORNEYS FOR PLAINTIFF

ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subd. 1, to the party against whom the allegations in this pleading are asserted.

M.A. ZIMMER LAW

Dated: December 22, 2010       By: *MAZ*
                                   Michael A. Zimmer    (#141811)

11

# M. A. Zimmer Law

A Professional Corporation

A Personal Injury Law Firm

CK 5349

Michael A. Zimmer, Attorney
Certified Civil Trial Specialist*

Admitted to practice in
Minnesota
Wisconsin
Arizona

RECEIVED
10 DEC 22 PM 12: 17
CLERK, U.S. DIST. COURT
MINNEAPOLIS

December 22, 2010

Filing Division
United States District Court
District of Minnesota-Fourth Division
U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Re:   Layla Linegar v. Mark Lobanoff, M.D., and North Suburban Eye Specialists, LLP

Dear Filing:

Enclosed for filing please find the following:

1. Complaint;
2. Summons in a Civil Action;
3. Civil Cover Sheet;
4. Motion for Admission Pro Hac Vice (Todd J. Krouner);
5. Motion for Admission Pro Hac Vice (Scott J. Koplik); and
6. Filing Fees in the amount of $550.00 made payable to the Clerk of Court.

Very truly yours,

Michael A. Zimmer

MAZ/mmv

Enclosures

cc:   Todd J. Krouner
      Scott J. Koplik

88 South Tenth Street • Suite 300 • Minneapolis, MN 55403
Phone: 612.746.5546 • Fax: 612.333.2763 • mazimmer@mazimmerlaw.com

*Certified as a Civil Trial Specialist by the Minnesota State Bar Association Board of Legal Certification
Certified in Civil Trial Advocacy by the National Board of Trial Advocacy